RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MAR 0 7 2017

FILED_____
DOCKETED_____
DATE        INITIAL

Appeal No: 16-56647

USDC 5:16-cv-00952-JGB-SP

In

# THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

Yoana A. Kiprilov,

*Appellant-Plaintiff,*

-v.-

National Board of Medical Examiners,

*Appellee-Defendant*

Appeal from the United States District Court,

Central District of California

District Court No: 5:16-cv-00952-JGB-SPx

Hon. Jesus G. Bernal, Hon. Sherry Pym

Appellant's Statement in defend of the Appeal

## Appellant's Statement that Appeal should go forward

Address: 1053 E. 6TH Street, Ap.26, Ontario CA 91764

Phone: 707-570-5155

# **Pro se party**

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

Yoana A. Kiprilov          9th Cir. Case No. 16 - 56647
Appellant(s),

---

v.

National Board of Medical Examiners
Appellee(s).

## STATEMENT THAT APPEAL SHOULD GO FORWARD
(attach additional sheets as necessary)

1. Date(s) of entry of judgment or order(s) you are challenging in this appeal:

See attached.

2. What claims did you raise to the court below?

See attached.

Appeal case No: 16-56647

# STATEMENT THAT APPEAL SHOULD GO FORWARD
## (Pro se Form with Attachment)

**1.** <u>Date (s) of entry of jurisdiction or order (s) you are challenging in this</u>

<u>appeal</u>: The Appeal is from the final judgment of dismissal entered on October

24, 2016, granting the Motion to Dismiss Plaintiff's Second Am. Complaint

("SAC") brought by the Defendant-NBME.

**Legal Argument:** The Case was dismissed (Fed. Rule 41 (b)) under Fed. Rule

(8)(a): (Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981,)

and Rule 12(b)(6). The court erred and **did not have the legal and the factual**

**grounds to dismiss** the case, the court misapplied the law.  Cases dismissed for a

non-compliance with Fed. Rule 8(a) and/or 12(b)(6) and appealed, are always

allowed to go forward and be reviewed for an **abuse of discretion**.

 In "Nevijel", the Ninth Circuit reviewed the appeal since:

> "The issues presented to this court are:
> **1)**whether the district court abused its discretion in dismissing appellants'
> amended complaint with prejudice for failure to comply with rules **8(a)**…and
> **2)**whether the district court abused its discretion in dismissing appellants'
> amended complaint with prejudice for failure to comply with rules **12(b)(6)…**
> A district court's dismissal pursuant to rule 41(b) will be overturned on appeal
> only if the district court abused its discretion.**";**
> "We review **de novo** dismissals for failure to state a claim under Rule
> 12(b)(6)"-   Carlin v. DairyAmerica, Inc., 705 F.3d 856, 866 (9th Cir. 2013).

**Similarly, this case** has to go forward and be reviewed for **abuse of discretion**.

"1915(e)(2)(B)(ii) parallels the language of ... 12(b)(6). We join our sister circuits and employ the same de novo standard to review such dismissals as we use to review dismissals pursuant to 12(b)(6) "(Barren v. Harrington 152 F.3d 1193, 1194 (9th Cir. 1998).

Similarly, the very possibility of an **abuse of discretion** in dismissing this case under Fed. Rule (8) with/or (and 12 (b)(6)), makes this case a **non-** frivolous, and necessitates its *de novo* review by the Ninth Circuit.

**B)** "Frivolous" means that the complaint lacks an arguable basis in a law or fact; a complaint is legally frivolous when it is based upon indisputably meritless legal theory (Neitzke v. Williams 490 U.S. 319 (1989). Neither of this is the case here.

**There is an arguable basis in law here**, which is whether there is a **breach of contract and breach** of the implied (in every contract) covenant of good faith and fair dealing. Appellee conceded that the **parties are in a contract**, and continue to be at the time of writing. The contract law/breach of contract[1] legal theory legally allow parties to resolve their contractual disputes in the court.

**There is an arguable basis in fact**: Appellee conceded that the parties are in a contract (elem.1 exist[1]). The **dispute is over the facts-2,3 and 4 of the breach**[1]- and requested to be decided by jury it since it is a **question of fact**. The dispute shows that there is a meritorious legal theory. And the case is not frivolous. [1] A breach of contract claim requires allegations of four elements:

**(1)** the existence of a contract, **(2)** plaintiff's performance or an excuse

or an excuse for non-performance; **(3)** defendant's breach, and **(4)** damages to the plaintiff therefrom. *(*Acoustics, Inc. v. Trepte Construction Co. (1971) 14 Cal.App.3d 887, 913

**In contrast**, as "frivolous"-without merit, were defined cases where:

-"Delta had already sent a refund check to Plaintiff's..., thereby discharging its contractual obligations...breach of contract claim was meritless" *(*Greenstein v. Peters (2:08-cv-06104), C.D. Cal.*)*

-filings are *"*numerous and without merit"- handicap Plaintiff filed about 400

lawsuits in CA under *ADA* (Molski v. Evergreen Dynasty. Corp. (9th Cir. 2008*)*.

- "not only...not state a cause of action against the plan's lawyers, or submit **any facts** in opposition..., but the act of suing the opponent's lawyers...is plainly nothing short of outrageous. *"* Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990). *"*.

- An inmate, suing for another inmate' death -*"*lacks standing to raise this claim,

and so his complaint on this point is without merit., Ybarra has failed to show that

he personally suffered any injury*"*. (Ybarra v. Hurley, NO. 9:09cv212, E.D.

Tex.) "frivolous... when it is apparent on its face that the statute of limitations

has expired. *"* Ray v. Kertes, 285 F.3d 287, 293 n. 5 (3d Cir. 2002*)*

As seen, all those cases are completely different than this one. By not allowing

this case to go forward, it would be a disruption of the normal legal proceedings,

since cases dismissed under (FRCP 8 or12) are ordinarily reviewed by 9th Circuit.

**2**. What claims did you raise to the court below?

**A.** Breach of contract, breach of covenant of good faith and fair dealing;

violations under BPC §17200 and 17500 (spreading of untruthful information);
non-compliance with EEOC-uniform guidelines/discriminatory defective scores.

**B.** The lawsuit stems from the fact that the testing company (called **NBME**)
**uses an exam that in the Appellant's case showed reliability (and validity)**
~~**issues, violating the contract provisions for a reliable (and valid) exam**~~.
**NBME never denied this fact in this case**. NBME **also** uses **unreliable way of**
**scoring** that **contradicts** NBME's own experts' recommendations for a
"*reliable*" scoring (publicly posted on usmle.org). NBME's own experts publicly
claim that such "inconsistent"/unreliable scoring "**may pose risk to the public**".
NBME **never denied this as well**. Thus, **NBME first- provided unreliable**
**exam and used unreliable scoring** policy, **then - based on the Appellant's**
**unreliable contradictory scores that NBME gave her, NBME claimed that**
**she has not passed the exam (fully performed) and should pay again ($1,535)**
**and retake.** The Appellant took twice Step 2 CS-exam in 2015 (in 4-months),
and her skills were rated as **both**: **pass and fail** on the same parts. The parts of
the exam (ICE, CIS, SEP), are defined as "*separate*" and "*different*" says NBME,
and "*CIS is more susceptible to rater's drift...score changes*", ICE-its "data
gathering" component- found (2015) to be useless for the purpose of the test, but
still scored (see SAC). **Once passed**, this exam **cannot be retaken anymore,** the
examinee is certified/can be employed/continue training in residency program.

Appellant's skills were rated as both: pass and fail on the **same** parts of the exam

"A test that yields **similar scores for a person who repeats** the test is said to measure a characteristic

|          | ICE-part | CIS-part | SEP-part | Overall |
|----------|----------|----------|----------|---------|
| May 2015 | *fail*   | **Pass** | pass     | FAIL    |
| Sept. 2015 | **pass** | *Fail*  | pass     | FAIL    |

**reliably.**" (U.S. Dept. of Labor, Employment and Training -Test and Assessment Guide)- PageID#195.

"A test with **poor reliability**, on the other hand, might result in very **different scores for the examinee across the two test administrations.** *(*page ID#615*)*.

This exam "was dropped… because of questions at the time about its reliability. In 2004 was added to the USMLE…pilot studies showed it was reliable."- claims NBME on **usmle.org**. (page ID# 192, 194, 197)

"Reliability" is one of the most important elements of test **quality**. It has to do with the **consistency**… If a test yields inconsistent scores, it may be unethical to take any substantive actions on the basis of the test" -see page# 615. "**Reliability** is also a key factor in evaluating the **validity** of an assessment. An assessment that fails to produce [consistent scores for the same individuals examined under near-identical conditions cannot be expected to make useful predictions of other measures (e.g., job performance). Reliability is critically important because it places a limit on **validity**" Page ID# 195- "Assessment Decision Guide," by U.S. Office of Personnel Management".

"The decision to hire an applicant might depend more on the reliability… than on his or her actual [e.g.writing] skills… You **cannot draw valid conclusions** from a **test score** unless you are sure that the **test** is reliable"- says U.S Dept. of Labor, Employment, and Training Admin.- "Test and Assessment-Guide"-page ID#195. **"An unreliable test offers no advantage over randomly assigning test scores to students"**(Wollack and Wells 2012- Assoc. Prof.s-Univ. of Massachusetts Amherst**).

NBME (scoring her skills as both pass and fail) shows that the exam **still has**

problems with reliability (and validity). **NBME never denied/opposed this fact.**

5 | 20

**NBME refused to combine** the scores from her two attempts and stated:

"the result is not compared with or influenced by a previously taken examination result. Therefore, it is possible to pass a specific section and fail it at later date" (page #620); (but once passed, the exam cannot be retaken). NBME's attorney stated: "she believes she should be allowed to **combine** scores", "rather than retake the test [for $1,535], as she can do at any time, Dr. K… has decided to devote her time and energy to litigation" (page ID#518).

**But NBME contradicts its five experts' advocacy for combining the scores:**

"Although it is common practice to base pass-/fail decisions only on the scores from the second attempt, it has been shown that **consistency improves by averaging scores from the two attempts** (Clauser, Nungster 2001…**We further propose the use of weighted average**… thereby producing a **composite score** that gives more influence to the **more reliable* assessment…** ("Measurement precision for repeat examinees on a standardized patient examination", 2012, Raymond MR, Swygert KA, Kahraman N.,); (page# **677**).

**Clauser and Nungster's (2001)-** NBME-study- also advocated for combining:
"classification for examinees with retakes could be based on an **average** rather than a single test score…
"When a proficient examinee fails a licensure examination due to measurement error…additional opportunities for testing not only corrects errors that would **penalize proficient** examinees but also **creates errors** that favor non-proficient examinees. **These errors may put the public at risk**... there is good reason to consider strategies to control… **error rate** that may **result from multiple retakes**. One important strategy is to **limit the number of retakes…** " This is a "document referenced to in the pleadings" (page #677)-should be considered.

NBME uses its own research to create the exam, contradicts its research and

refuses to follow its research conclusions that will bring NBME less money:

"clinical skills was added to the USMLE… pilot studies showed it was reliable. Advances in **testing science**… made this possible"- usmle.org. -page ID# 192. "The NBME research enterprise **provides new information for use in enhancing** existing products, developing new products, **informing best practices**, **and aiding evidence-based decisions…** Current projects include investigations related to...score reporting, validity, group differences…-nbme.org

**C.** In the initial complaint (page 8), First AM. (FAC-page#109), and SAC-
Second Am. Complaint (SAC-page# 707-line 4, 686, 673,755, 765 at 16), the
Appellant pleaded that, **based on her two entirely opposite** (pass-fail) test
scores on the same parts of 2 CS, the exam is not reliable (much less valid). And,
this is contrary to NBME's claims in the contract that the test is now *"reliable"*
and *valid* (pages #192, 614, 435-score validity). Appellant plead that **NBME
breached the contract, and breached the covenant of good faith and fair
dealing by (knowingly) not providing a reliable and valid exam, as promised
in the contract (on usmle.org)** (SAC-page #707-line 4, 686,**).** Before requiring
the Appellant to fully perform=pass in "one setting" all parts, first and foremost,
NBME should have (sold) provided to Appellant an exam without reliability and
validity issues, as agreed in the contract. However, NBME provided **faulty** exam
conditions-(unreliable exam) and **prevented full performance, breached the
contract, and affected her scores**. NBME claims that Step 2 CS has *"contrast"*
and *"sequence"* effects (*"artifacts… have impact on scores; scores…are
influenced by factors that are unrelated to the proficiencies of interest* [tested
skills]" – 47, 48, page ID# 707-708,). **The breach based on reliability is
undisputed by the NBME. NBME never denied/opposed in this lawsuit,** that
they sold to Appellant and used this exam **with reliability and validity issues,
and artifacts.**

**D.** In addition, it was pled that **NBME creates a breach of contract and the breach of the implied covenant of good faith and fair dealing** (page 707-708) **by knowingly contradicting its own research findings (2001, 2012) and experts' recommendations to combine** the scores from the two attempts (for a more *"reliable"* exam). ~~NBME intentionally refused to combine her scores and~~ incorporate research findings into their policy **in order have more retakes**, i.e. **receive more money** from the Appellant ($1,535/retake). NBME wanted the Appellant to retake for a third time, and passes all the three parts again. However, this scoring policy of multiple retakes is disfavored by NBME's own experts since *"errors…from multiple retakes may pose risk to the public"*. **NBME never denied or opposed, in this case, that they use such unreliable and *"risky"* to the public practice to make more money on the retakes. We have an undisputed by NBME breach.** Thus, **there is an undisputed breach based on two grounds - NBME's violation of contract provisions (unreliable exam), and then-refusal to use reliable scoring (to combine scores). This is where the court made a mistake of law and facts, ignoring justice and facts, and favored NBME by dismissing the case.**

**E.** In SAC, the breach of contract claim with its four elements was pled in details:

**1)** Existence of contract (see "element 1", SAC- 694)-was pled as:

[parties] *"entered written bilateral contract specifically for Step 2 CS in March 2015, terms and conditions are published online…"*,

and NBME itself noted (page ID 363):

*"Dr. K… argues that she has an implied contract with NBME, the terms of which 'are specifically stated on USMLE-website and ECFMG-website.',* and *"NBME agrees that its relationship with Dr. K. is contractual in nature, and that the terms of the contract are found…on its website prior to testing"*. (page 363).

The court referred to the usmle.org-website for the provisions on the contract:

**"NBME's publicly available information states…",** and **"as noted prominently on NBME's publicly available materials"**. The research studies/expert' recommendations are posted on usmle.org by NBME, as well the claims about the exam reliability and validity.

**2)** "Plaintiff's performance" (SAC, page 701)- Appellant pleads that full performance as impossible under the **faulty conditions** (reliability issues and unreliable scoring) provided by NBME (page 703-line 22, 707-line 4), and also invokes the doctrine of **substantial performance in the faulty conditions:**

*"the reliability problem (among other things) resulting in two different scores prevented me from achieving a reliable and passing results in a "single administration"*, [Appellant's] *"omission in performance ('single administration' is slight and will not impair the value of the contract (to test skills on each part)."*

  Other courts held:
  "The court's final conclusion was that the imperfections due to plaintiff's failure to perform the contract in strict accordance with its terms are trivial and of a minor character as compared with the **extent and magnitude of the entire work** embraced in said contract,…We agree with this conclusion, and we are of the opinion that the case comes within the established doctrine under which a contractor may recover in a suit…, upon showing substantial, though not in all respects complete, performance." THOMAS HAVERTY CO. v. JONES•185 Cal. 285, 294 (Cal. 1921).

Plaintiff's performance was considered as substantial-to earn vacation pay/broker's commission *"Division of Labor Law Enforcement v. Ryan Aero. Co., (1951) 106 Cal.App.2d Supp. 833, 835; and Cline v. Yamaga, 97 Cal. App. 3d 239 (Cal. Ct. App. 1979).* NBME claimed in a research study that lower scores on second attempt are likely due to "overconfidence" (not lack of skills).

**3**) In SAC- "element 3"- Appellant pleads NBME' breach- based on: exam reliability and refusal to combine scores-(page 707 at 3.3), and separately -based on substantial performance doctrine (page 706 at 3.2.). **NBME did not dispute the breach due to NBME's violation of the contract by providing unreliable exam and unreliable scoring. NBME only argued on the substantial performance (passing the parts separately)- that is "not a trivial" deviation from full performance (passing the parts one setting), based on NBME-attorney's personal non-expert opinion.** Appellant pled that common testing practices allows passing the parts separately (CPA-exam; Cal. Medical licensing (Board) exam after residency/training under BPC§ 2177 (b); Dental Bd. Exams-page 686, Baji-case-allowed to retake only the part he failed).

**4**) Appellant pled career damages, monetary damages (as of today, $4,600 spent on this exam), the years lost in unemployment and as a practicing physician, and decreased to zero chances for a residency position (due to two "fail" attempts, and the time spent-6m waiting for the scores from the attempts).

"I have suffered significant career and financial damages (I have paid $3,160 for the exam [2015]), since my pass results are not recognized by NBME, I am not allowed to be employed as a physician. All residency programs require a passing result on Step 2 CS…Since residency programs considers the time spent and attempts to pass an exam, as well as years since graduation, my career due to NBME's conduct has suffered damages and significantly decreased my chances to get into a residency",
"I have lost time and money, and will lose more time to study and repeat material that I have passed…the current damages and a third attempt will result in bigger future harm to Plaintiff's career-pages 127, SAC-696, 756.

"total loss of three potential years of being into a residency program…(total loss of min. $158,000) and three years of making full salary as a physician after residency (min, $450,000)" (Page 15-line 15 in the initial complaint).

On Page 24-25 citing Exhib. on page 608-line 48,49, **Appellant cited** Dr. E

Cassimatis who stated:

"residency programs have as a condition of initial employment the requirement that residents have passed Step2 CS. In such circumstances **graduates who have not passed…are denied employment"** **concerns have also been raised regarding the scoring...**(page 50-at 32-40).

Dr. Cassimattis is an ECFMG President/CEO, and with NBME's president/CEO

Dr. Melnick, are two of the four 2CS-exam-Committee members.

**5)** Despite these factual allegations pleaded in the breach of contract claim,

**NBME frivolously claimed (page 732-733)** that Appellant:

- *"has not provided any facts from which one reasonably could conclude that she **suffered damages** as result of any claimed breach", "because Dr. K… has* ***not pled any facts*** *that would plausible establish three of the four elements of breach of contract, the court should dismiss her claim".*

Plaintiff has pled facts (she is not certified, unemployed, lost money), at this early

pleading stage, and offered residency-program directors as witnesses;

11 | 20

-*"has not identified any contractual obligations that NBME failed to perform"* -
Appellant has pointed out that NBME claims publicly on usmle.org that the exam
is reliable and the results are reliable/"validated", but instead NBME provided to
her unreliable exam. NBME failed to perform under the contract.

- *"has not alleged full performance under the alleged contract"* – it was plead
that **NBME prevented full performance (pled on page 700,704, 707-line 4)** as
result of their unreliable exam and creating faulty exam conditions. Only
Substantial performance under these faulty conditions is possible.

**F.** Appellant also pleaded that NBME's claims that they "protect the public" with
a "reliable" exam and scoring are incorrect. Since, **actually**, the exam and the
scoring are unreliable/invalid, and thus NBME creates ***"a risk to the public"*** (as
admitted by NBME-experts). These false statements by NBME under BPC 17200
and 17500, deceived the Appellant as an examinee and as a member of this
society. It was pled that NBME also violates CA Evid. Codes 622-623 by
contradicting itself in the contract ("The written paper or instrument need not
represent an agreement" (Generes v Justice Court (1980) 106 Cal. App. 3d 678,
684 [165 Cal. Rptr.222]).

**G.** As a contributing factor affecting the scores, it was pointed out that in 2013
NBME changed the scoring decreasing the passing rate for US/Canadian-
graduates with only 3% but for all others with 18%. US and Canadian graduates

are put in one group have (pass rate 96%), and all others-group (btw. 74-86%)

(usmle.org)-page # 39,40. As per the EEOC-Uniform guidelines Sections 1606

and 1607:

"EEOC describes - "national origin" discrimination based on…individual's, or
his or her ancestor's, place of origin; or because an individual has the physical,
cultural or **linguistic** characteristics of a national origin group" and… **attendance
or participation in schools…, generally used by persons of a national origin
group**". (29 C.F.R. S 1606 and 1607).
"These guidelines apply to **tests** and selection procedures used for any
employment decisions. **Employment decisions** include …licensing and
certification".
"**User.** Any employer… or licensing or certification board…which uses a
selection procedure as a basis for any employment decision."

EEOC also advises that (SAC-page#668) exams like this one should be used later

(after residency), not before residency training (the way they are used now):

"Use of selection procedures to evaluate applicants for a higher level job would
not be appropriate:
(3) If the selection procedures measure knowledges, skills, or abilities required
for advancement which would be expected to develop principally from the
training or experience on the job". [1607.5].

Appellant pled that majority of the currently practicing physicians have never

taken and passed this exam, incl. NBME's physicians, NBME's CEO, and the

exam Committee members (in 2015), citing Griggs v Duke Power Co, 401 US

424 (1971).  NBME pled that EEOC -guidelines are not applicable, because

NBME is not Appellant's employer. However, In Hartman v NBME, Civil

Action No. 09-5028, Pennsylvania), another examinee sued NBME for the same

exam, NBME asserted that the same guidelines are applicable to them. In neither

case is NBME an examinee's employer. NBME took opposite positions in two different courts (preventable by judicial estoppel).

**H**. **ECFGM, was erroneously removed as a Defendant**, although Appellant cited csec-website (on page 670) and pled that-(page 713):

"The Step 2 CS exam is **administered by CSEC. CSEC combines the expertise** of the **ECFMG® and NBME®**", "ECFMG partners with the NBME **in administering Step2** CS, …ECFMG has…areas of expertise: **assessing c**linical skills [**i.e. 2 CS-exam**].

NBME issues certificates to US-graduates, and ECFMG issues certificates to foreign graduates. NBME and ECFGM were transferring the ball to each other, misleading the court. NBME claimed that they do not issue the certificate to foreign graduates as Appellant (only to US-grads), ECFMG claimed they are not responsible for the scoring, thus both trying to escape the law.

Appellant put them together- they both "**administer**"-**ed** the exam with reliability issues, and the **court made a mistake** in dismissing ECFMG. NBME used unreliable scoring, but ECFMG could have issued the certificate based on the fact that Appellant has passed each part of the exam (despite the faulty conditions she was put in) and despite the NBME's unreliable scoring.

**3**. What do you think the court below did wrong? (You may, but need not, refer to cases and statutes.)

The court **erred in his decision and abused its discretion (dismissing** the case)

based on Fed. Rules 8(a)/12(b)(6), since the court made a mistake in the interpretation and application of the law, the legal doctrines, and the facts. The court **did not have the legal and factual grounds to dismiss the case and favor NBME, but the claims/facts were plausible enough to confirm the breach.**

   a)  The ~~court unjustly omitted the central/main factual allegation of the~~ **breach claim** (SAC-page 707-line 4)**- the exam is not reliable,** and "for the purposes of a motion to dismiss we must take **all** of the factual allegations in the complaint as true" (Starr v. Baca 652 F.3d 1202,1216 (9th Cir 2011). Appellant was telling the court multiple times (in all three complaints- initial, FAC and SAC) that the exam showed **reliability** issue. Appellant even attached **twice** (pages 192 and 614) a page from usmle.org/the contract where NBME publicly claims that the exam is reliable. This is a mistake of law.

The court also omitted the fact that providing an unreliable exam to the Appellant, eventually results in contradictory and inconsistent unreliable scores, i.e. **the court omitted here the "critical aspect of causation"** (*Id.*)**: unreliable exam leads to unreliable/opposite scores (described by experts above)**. The same as: unreliable blood sugar test gives unreliable blood sugar results (affecting the diagnosis of diabetes and the treatment). Finally, the court omitted the fact that **the breach of contract based on the reliability issue was undisputed by NBME**. The court should have confirmed this breach, since it is

not opposed by NBME. These unjust omissions affected adversely the case and are **mixed mistakes of law/fact**.

**b)** The court misinterpreted and misstated Appellant's assertions and "*desire*"- The court claimed that it is "*Plaintiff's desire to change…NBME's scoring*", but Appellant at least **three times** states **that it is not hers, but NBME's own experts' "*desire*" and advocacy** to change the scoring since it is not reliable. (SAC- pages 707-line 27,757). Moreover, NBME itself claims that it uses its own research studies to improve the exams. Appellant asserted the NBME should have followed its own research-based conclusions and applied what NBME itself claims to be a more "reliable" scoring. **Appellant specifically and clearly stated** on page 757-line 12 that **"I just want fair scoring with no reliability issues, especially when I have to pay so much money for this exam, and this affects my career and employment".** Appellant's "*desire*" is, actually, **her right as an examinee to have a reliable exam** and reliable scoring. Thus, the court's reasoning to dismiss the case based on "*Plaintiff's desire*" not legally and factually justified. And this "*desire*" is based on NBME's own research findings.

**c)** The court **erred in disregarding the fact that by providing faulty** exam conditions, only the substantial performance doctrine can answer the question whether the Appellant has the necessary skills on each part of the exam. NBME rated her skills on the three parts as "pass". Substantial performance based on

passing separately parts of an exam is supported by common testing practice-see above).

**d)** The court made a mistake of fact/law since it **omitted other of the pleaded NBME's violations** (BPC 17200, 17500 and Evid. Code 622-623-making untruthful and contradictory statements).

**e)** Appellant also requested: specific performance (preliminary injunction) with/without damages; or to be allowed to review in details her two contradictory/failing papers; or free third retake and the contradictory results removed from her file –none was granted-the court **omitted** and remained blind, deaf and mute for these requests. The court made a mistake of law regarding rules for preliminary injunction (see Hartman v. NBME -Civil Action No. 09-5028, E.D. Pennsylvania). Regarding the preliminary injunction this court held:

"In addition, the longer Hartman continues to be barred from entering the profession, the longer society is prevented from enjoying the work of a very promising medical student …–irreparable injury–is also present. Any further delays will likely cost Hartman another year in applying to residency programs In order to merit the extraordinary relief of a preliminary injunction, Hartman must meet four factors…"(Hartman v. National Board of Medical Examiners Civil Action No. 09-5028, Eastern District, PA **citing** Doe v. Nat'l Bd. of Med. Exam'rs, 199 F.3d 146, 154 (3d Cir. 1999).

"Trial court traditionally consider two factors...to issue preliminary injunction: is the Appellant likely to prevail on the merits, and would the Applicant be more harmed by withholding the injunction…The greater the showing on one factor, the less must be shown on the other to issue the injunction" (Butt v. State of California, 842 P.2d 1240 (Cal. 1992) -cited on page 699 in SAC.

**f) the court and NBME unjustly** put the Appellant in a situation where she has to continue passing multiple times each "*separate*" part of the exam, keep paying, and still not be certified/employed because of unreliable exam. After the court ruled against her, in a desperate attempt to save her career, Appellant did not pay IRS, but paid NBME for a third attempt. She requested guarantees for reliability, but NBME did not respond and did not give any guarantees for reliability/validity. NBME stopped communicating after she paid for the exam. Appellant paid total more than $4,600 for this exam. NBME and the court unfairly make her to pass multiple times parts of this exam (compared to examinees who passed the parts only once, in "one setting", and were certified). NBME and the court treat Appellant as someone who has never taken and passed the parts of this exam (as a first-time test-taker) and apply the same "single administration" rule, when in fact - Appellant passed all parts in 2015 and is a third-time test taker. Due to reliability issues and the two contradictory scores, it is likely that Appellant's score on ICE in May 2015 and CIS in Sept. 2015 were (unreliably) rated as fail, when they are, actually "passed". Appellant's results were "validated" (per page 192), but

"tests …cannot be valid unless they are reliable "Citation: Huitt, W. (1999, October). Reliability and validity. Educational Psychology Interactive. Valdosta, GA: Valdosta State University. Retrieved".

**g)** The court mistakenly ruled that SAC is "equally verbose, confusing and conclusory", without even a single hearing. In FAC and SAC the breach is based on entirely different grounds: FAC (on component-subcomponent wordplay, reliability is contributing), SAC- on reliability/validity and substantial performance (added in SAC). FAC-deficiencies were cured in SAC, and the four elements of breach pled in details in SAC. In our case, the court did not allow a third Am. Complaint, without any directions as to what had to be cured,

"district court satisfied this requirement by instructing Zamnik on how to cure the deficiencies in the complaint" Zamnik v Stillions (Case#.36-3_11, 9th Cir 1988)

**SAC meets/exceeds the requirement of Fed. Rule 8 (a) and 12(b) (6)**. The claim for breach is stated in plain and short statement (SAC page 673), supported by facts and thus, creating a plausible claim. NBME did not have difficulty in responding to the claims. The criteria for these rules are clear, and defined by the Ninth Circuit:

> "Some complaints are windy but understandable. Surplusage can and should be ignored…The FAC and the original complaint contain excessive detail, but are intelligible and clearly **delineate the claims and the Defendants** against whom the claims are made… Here, the Defendants should have no difficulty in responding to the claims with an answer…" Hearns v. San Bernardino 530 F.3d 1124, 1131 (9th Cir. 2008)

**"Plausibility"** of the claims in our case is solidly supported by research/expert's findings and facts, and by **undisputed breach** of contract/covenant of good faith-fair dealing based on use of unreliable exam, **thus Rule 12(b)(6) was satisfied.**

**4**. Why are these errors serious enough that this appeal should go forward?

The case should go forward since the NBMEs **scoring policy and the ruling**

, **both** contradict research/experts' conclusions and the rules for a "*reliable*

*assessment*". And, **because this dangerous scoring policy "*may pose risk to the*

~~*public*~~" i.e. **endangers millions of patients' lives** and affects more than 30,000

examinees each year. Thus, the "*public policy strongly favor[s] resolution of this*

*dispute on the merits.*" The ruling **was entirely based on court's**

**(mis)interpretations of "*Plaintiff's desires*", rather than on the facts,**

**research/expert's conclusions, exam defects (undisputed claims).**

Also, the **financial and career damages** (decreasing Appellant's chances to

become a practicing physician in the US to zero) **were completely disregarded**

**by the court**, thus the court erred in not granting any other relief it may find

reasonable and thus, NBME's wrongdoing remains uncompensated**.**

**5.** Additional Information: Appellant respectfully submits this statement and

requests for a **de novo** review by the Ninth Circuit so that justice be served.

Dated: 03/03/ 2017

YOANA A. Kiprilov
Print Name (s)

Signature (s)
Appellant (s) **in Pro Se**

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MAR 06 2017

FILED_____
DOCKETED_____
DATE      INITIAL

**Form 6.  Certificate of Compliance With Type-Volume Limit**

Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1. This document complies with [the type-volume limit of Fed. R. App. P.
   [**insert Rule citation; e.g., 32(a)(7)(B)**  *≤ 20 pages* ]] [the word limit of
   Fed. R. App. P. [**insert Rule citation; e.g. 5(c)(1)**  *5,200* ]]
   because, excluding the parts of the document exempted by Fed. R. App. P. 32(f)
   [and [**insert applicable Rule citation, if any**  *cover page* ]]:

   ☒ this document contains  *5,192*  words, or

   ☐ this brief uses a monospaced typeface and contains _____ lines of text.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)
   and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

   ☒ this document has been prepared in a proportionally spaced typeface using
   _____ *size 14* _____ in
   _____ *Times New Roman* _____, or

   ☐ this document has been prepared in a monospaced typeface using

   _____ with

   _____ .

   /s/ *Yorie*
   Attorney for  *Pro Se*
   Dated:  *03/03/2017*

11/16