# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

Yoana A. Kiprilov
_____
Appellant(s),

9th Cir. Case No. 16-56647

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

v.

MAR 09 2017

National Board of Medical Examiners
_____
Appellee(s).

FILED_____
DOCKETED_____
              DATE          INITIAL

## STATEMENT THAT APPEAL SHOULD GO FORWARD
(attach additional sheets as necessary)

1. Date(s) of entry of judgment or order(s) you are challenging in this appeal:

See Attached, please                                    .

2. What claims did you raise to the court below?

See Attached, please

Appeal No: 16-56647

USDC 5:16-cv-00952-JGB-SP

---

In

## THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

---

Yoana A. Kiprilov,

*Appellant-Plaintiff,*

-v.-

National Board of Medical Examiners,

*Appellee-Defendant*

---

Appeal from the United States District Court,

Central District of California

District Court No: 5:16-cv-00952-JGB-SPx

Hon. Jesus G. Bernal, Hon. Sherry Pym

Appellant's Statement in defend of the Appeal

---

## Appellant's Statement that Appeal should go forward

---

Address: 1053 E. 6TH Street, Ap.26, Ontario CA 91764

Phone: 707-570-5155

# <u>Pro se party</u>

Appeal case No: 16-56647
# STATEMENT THAT APPEAL SHOULD GO FORWARD
## (Pro se Form with Attachment)

**1.** Date (s) of entry of jurisdiction or order (s) you are challenging in this

appeal: The Appeal is from the final judgment of dismissal entered on October

24, 2016, granting the Motion to Dismiss Plaintiff's Second Am. Complaint

("SAC") brought by the Defendant-NBME.

**Legal Argument:** The Case was dismissed (Fed. Rule 41 (b)) under Fed. Rule

(8)(a): (Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981,)

and Rule 12(b)(6). The court erred and **did not have the legal and the factual**

**grounds to dismiss** the case, the court misapplied the law. Cases dismissed for

a non-compliance with Fed. Rule 8(a) and/or 12(b)(6) and appealed, are always

allowed to go forward and be reviewed for an **abuse of discretion**.

In "Nevijel", the Ninth Circuit reviewed the appeal since:

> "The issues presented to this court are:
> **1)**whether the district court abused its discretion in dismissing appellants'
> amended complaint with prejudice for failure to comply with rules **8(a)**...and
> **2)**whether the district court abused its discretion in dismissing appellants'
> amended complaint with prejudice for failure to comply with rules **12(b)(6)**...
> A district court's dismissal pursuant to rule 41(b) will be overturned on appeal
> only if the district court abused its discretion.**";**
> "We review **de novo** dismissals for failure to state a claim under Rule
> 12(b)(6)**"-**    Carlin v. DairyAmerica, Inc., 705 F.3d 856, 866 (9th Cir. 2013).

**Similarly, this case** has to go forward and be reviewed for **abuse of discretion**.

"1915(e)(2)(B)(ii) parallels the language of ...12(b)(6). We join our sister circuits and employ the same de novo standard to review such dismissals as we use to review dismissals pursuant to 12(b)(6) "(Barren v. Harrington 152 F.3d 1193, 1194 (9th Cir. 1998).

Similarly, the very possibility of an **abuse of discretion** in dismissing this case

under Fed. Rule (8) with/or (and 12 (b)(6)), makes this case a **non-** frivolous,

and necessitates its *de novo* review by the Ninth Circuit.

**B)** "Frivolous" means that the complaint lacks an arguable basis in a law or fact;

a complaint is legally frivolous when it is based upon indisputably meritless

legal theory (Neitzke v. Williams 490 U.S. 319 (1989). Neither of this is the

case here. **There is an arguable basis in law here**, which is whether there is a

**breach of contract and breach** of the implied (in every contract) covenant of

good faith and fair dealing. Appellee conceded that the **parties are in a**

**contract**, and continue to be at the time of writing. The contract law/breach of

contract[1] legal theory legally allow parties to resolve their contractual disputes in

the court.**There is an arguable basis in fact**: Appellee conceded that the parties

are in a contract (elem.1 exist[1]). The **dispute is over the facts-2,3 and 4 of the**

**breach**[1]- and requested to be decided by jury it since it is a **question of fact**.

The dispute shows that there is a meritorious legal theory. And the case is not

frivolous.

[1] A breach of contract claim requires allegations of four elements:
**(1)** the existence of a contract, (2) plaintiff's performance or an excuse

or an excuse for non-performance; (**3**) defendant's breach, and (**4**) damages to the plaintiff therefrom. *(*Acoustics, Inc. v. Trepte Construction Co. (1971) 14 Cal.App.3d 887, 913

**In contrast**, as "frivolous"-without merit, were defined cases where:

-"Delta had already sent a refund check to Plaintiff's..., discharging its contractual obligations...breach of contract claim was meritless" (Greenstein v. Peters (2:08-cv-06104), C.D. Cal.).

- *"*numerous and without merit" filings - Plaintiff filed 400 lawsuits under *ADA* (Molski v. Evergreen Dynasty. Corp. (9th Cir. 2008*)*.

- "not only...not state a cause of action against the plan's lawyers, or submit **any facts** in opposition..., but the act of suing the opponent's lawyers...is plainly nothing short of outrageous.*"* Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990).*"*.

- An inmate, suing for another inmate' death –

*"*lacks standing to raise this claim, and so his complaint on this point is without merit., Ybarra has failed to show that he personally suffered any injury*"* (Ybarra v. Hurley, NO. 9:09cv212, E.D. Tex.),

"frivolous… when it is apparent on its face that the statute of limitations has expired.*"* Ray v. Kertes, 285 F.3d 287, 293 n. 5 (3d Cir. 2002*)*

As seen, all those cases are completely different than this one. By not allowing

this case to go forward, it would be a disruption of the normal legal proceedings.

**2**. What claims did you raise to the court below?

**A.** Breach of contract, breach of covenant of good faith and fair dealing;

violations under BPC §17200 and 17500 (spreading of untruthful information);

non-compliance with EEOC-uniform guidelines/discriminatory scores.

**B.** The lawsuit stems from the fact that the testing company (called **NBME**) **uses an exam that in the Appellant's case showed reliability (and validity) issues, violating the contract provisions for a reliable (and valid) exam. NBME never denied this fact in this case**. NBME **also** uses **unreliable way of scoring** that **contradicts** NBME's own experts' recommendations for a "*reliable*" scoring (publicly posted on usmle.org). NBME's own experts publicly claim that such "inconsistent"/unreliable scoring "**may pose risk to the public**". NBME **never denied this as well**. Thus, **NBME first- provided unreliable exam and used unreliable scoring** policy, **then - based on the Appellant's unreliable contradictory scores that NBME gave her, NBME claimed that she has not passed the exam (fully performed) and should pay again ($1,535) and retake.** The Appellant took twice Step 2 CS-exam in 2015 (in 4-months), and her skills were rated as **both**: **pass and fail** on the same parts. The parts of the exam (ICE, CIS, SEP), are defined as "*separate*" and "*different*" says NBME, and "*CIS is more susceptible to rater's drift...score changes*", ICE-its "data gathering" component- found (2015) to be useless for the purpose of the test, but still scored (see SAC). **Once passed**, this exam **cannot be retaken anymore,** the examinee is certified/can be employed/continue training.

This exam "was dropped... because of questions at the time about its reliability. In 2004 was added to the USMLE...pilot studies showed it was reliable."- claims NBME on usmle.org. (page ID# 192, 194, 197)

Appellant's skills were rated as both: pass and fail on the same parts

|  | ICE-part | CIS-part | SEP-part | Overall |
|---|---|---|---|---|
| May 2015 | *fail* | **Pass** | pass | FAIL |
| Sept. 2015 | **pass** | *Fail* | pass | FAIL |

"A test that yields **similar scores for a person who repeats** the test is said to measure a characteristic **reliably.**" (U.S. Dept. of Labor, Employment and Training -Test and Assessment Guide*)- PageID#195.

"A test with **poor reliability**, on the other hand, might result in very **different scores for the examinee across the two test administrations.** *(*page# 615).

"Reliability" is one of the most important elements of test **quality**. It has to do with the **consistency**… -see page# 615.
"**Reliability** is also a key factor in evaluating the **validity** of an assessment. An assessment that fails to produce [consistent scores for the same individuals examined under near-identical conditions cannot be expected to make useful predictions of other measures (e.g., job performance). Reliability is critically important because it places a limit on **validity**" Page ID# 195- "Assessment Decision Guide," by U.S. Office of Personnel Management**".**

"The decision to hire an applicant might depend more on the reliability… than on his or her actual [e.g.writing] skills… You **cannot draw valid conclusions** from a **test score** unless you are sure that the **test** is reliable"- says U.S Dept. of Labor, Employment, and Training Admin.- "Test and Assessment-Guide"- page ID#195. **"An unreliable test offers no advantage over randomly assigning test scores to students"**(Wollack and Wells 2012- Assoc. Prof.s- Univ. of Massachusetts Amherst**).**

**NBME never denied that they used and sold to Appellant unreliable exam and her contradictory scores show reliability issue. The breach based on reliability is undisputed by the NBME. And. NBME never denied they used unreliable way of scoring contradicting their own research conclusions:**

**NBME refused to combine** the scores and stated (page 620):

"the result is not compared with or influenced by a previously taken examination result. Therefore, it is possible to pass and fail it at later date." NBME's attorney stated: "she believes she should be allowed to **combine** scores", "rather than retake the test [for $1,535], as she can do at any time, Dr. K… has decided to devote her time and energy to litigation" (page ID#518).

**But NBME contradicts its five experts' advocacy for combining the scores:**

"Although it is common practice to base pass-/fail decisions only on the scores from the second attempt, it has been shown that **consistency improves by averaging scores from the two attempts** (Clauser, Nungster 2001…**We further propose the use of weighted average**… thereby producing a **composite score** that gives more influence to the **more reliable\* assessment…**("Measurement precision for repeat examinees on a standardized patient examination", 2012, Raymond MR et all. (page# **677**).

**Clauser and Nungster's (2001)**- NBME-study- also advocated for combining:
  "classification for examinees with retakes could be based on an **average** rather than a single test score…
"When a proficient examinee fails a licensure examination due to measurement error…additional opportunities for testing not only corrects errors that would    **penalize proficient** examinees but also **creates errors** that favor non-proficient examinees**. These errors may put the public at risk**… there is good reason to consider strategies to control… **error rate** that may **result from multiple retakes. One** important strategy is to **limit the number of retakes…"** This is a "document referenced to" (page #677.

NBME uses its own research, contradicts its research and refuses to follow its

research conclusions that will bring NBME less money:

"The NBME research enterprise **provides new information for use in enhancing** existing products, developing new products, **informing best practices, and aiding evidence-based decisions…**Current projects include investigations related to…score reporting, validity, group differences-nbme.org

**C.** In the initial complaint (page 8), First AM. (FAC-page#109), and SAC-

Second Am. Complaint (SAC-page# 707-line 4, 686, 673,755, 765 at 16), the

Appellant pleaded that, **based on her two entirely opposite** (pass-fail) test

scores on the same parts of 2 CS, the exam is not reliable (much less valid).

And, this is contrary to NBME's claims in the contract that the test is now

*"reliable"* and *valid* (pages #192, 614, 435-score validity). Appellant plead that

**NBME breached the contract, and breached the covenant of good faith and**

**fair dealing by (knowingly) not providing a reliable and valid exam, as**

**promised in the contract (on usmle.org)** (SAC-page #707-line 4, 686,). Before

requiring the Appellant to fully perform=pass in "one setting" all parts, first and

foremost, NBME should have (sold) provided to Appellant an exam without

reliability and validity issues, as agreed in the contract. However, NBME

provided **faulty** exam conditions-(unreliable exam) and **prevented full**

**performance**, **breached the contract, and affected her scores**. NBME claims

that Step 2 CS has *"contrast"* and *"sequence"* effects (*"artifacts… have impact*

*on scores; scores…are influenced by factors that are unrelated to the*

*proficiencies of interest* [tested skills]" – 47, 48, page ID# 707-708,). **NBME**

**never denied/opposed in this lawsuit,** that they sold to Appellant and used this

exam **with reliability and validity issues, and artifacts.**

**D.** In addition, it was pled that **NBME creates a breach of contract and the**

**breach of the implied covenant of good faith and fair dealing** (page 707-708)

**by knowingly contradicting its own research findings (2001, 2012) and experts' recommendations to combine** the scores from the two attempts (for a more "*reliable*" exam). NBME intentionally refused to combine her scores and incorporate research findings into their policy **in order have more retakes**, i.e. ~~receive more money~~ from the Appellant ($1,535/retake). NBME wanted the Appellant to retake for a third time. However, this scoring policy of multiple retakes is disfavored by NBME's own experts since "*errors...from multiple retakes may pose risk to the public*". **NBME never denied or opposed, in this case, that they use such unreliable and "*risky*" to the public practice to make more money on the retakes. We have an undisputed by NBME breach. This is where the court made a mistake of law and facts, ignoring justice and facts, and favored NBME by dismissing the case.**

**E**. In SAC, the claims were pled in details:

**1)** Existence of contract (see "element 1", SAC- 694)-was pled as:

[parties] "*entered written bilateral contract specifically for Step 2 CS in March 2015, terms and conditions are published online...*",(page ID 363): "*Dr. K... argues that she has an implied contract with NBME, the terms of which 'are specifically stated on USMLE-website and ECFMG-website.',* and "*NBME agrees that its relationship with Dr. K. is contractual in nature, and that the terms of the contract are found...on its website prior to testing*". (page 363).

The court referred to the usmle.org-website as the contract: "**NBME's publicly available information states…**", and "**as noted prominently on NBME's**

**publicly available materials**". The research studies/expert' recommendations

are posted on usmle.org by NBME, as are the reliability and validity claims.

**2)** "Plaintiff's performance" (SAC, page 701)- Appellant pleads that full

performance as impossible under the **faulty conditions** (reliability issues and

unreliable scoring) provided by NBME (page 703-line 22, 707-line 4), and

invokes the doctrine of **substantial performance in the faulty conditions:**

> "the reliability problem (among other things) resulting in two different scores
> prevented me from achieving a reliable and passing results in a "single
> administration", [Appellant's] "omission in performance ('single
> administration' is slight and will not impair the value of the contract (to test
> skills on each part)."

>  Other courts held:
>  "The court's final conclusion was that the imperfections due to plaintiff's
> failure to perform the contract in strict accordance with its terms are trivial
> and of a minor character as compared with the **extent and magnitude of the
> entire work** embraced in said contract,...We agree with this conclusion, and
> we are of the opinion that the case comes within the established doctrine
> under which a contractor may recover in a suit…, upon showing substantial,
> though not in all respects complete, performance." THOMAS HAVERTY
> CO. v. JONES•185 Cal. 285,  294  (Cal. 1921).

Plaintiff's performance was considered as substantial-to earn vacation

pay/broker's commission (page 702). NBME claimed in a research study that

lower scores (second attempt) are due to "overconfidence" (not lack of skills).

**3)** In SAC- "element 3"- Appellant pleads NBME' breach- based on: exam

reliability and refusal to combine scores-(page 707 at 3.3), and separately -based

on substantial performance doctrine (page 706 at 3.2.). **NBME did not dispute**

**the breach due to NBME's violation of the contract by providing unreliable exam and unreliable scoring. NBME only argued on the substantial performance (passing the parts separately)- that is "not a trivial" deviation from full performance (passing the parts one setting), based on NBME-attorney's personal non-expert opinion.** Appellant pled that common testing practices allows passing the parts separately (CPA-exam; Cal. Medical licensing (Board) exam after residency/training under BPC§ 2177 (b); Dental Bd. Exams-page 686, Baji-case-allowed to retake only the part he failed).

**4)** Appellant pled career damages, monetary damages (as of today, $4,600 spent on this exam), the years lost in unemployment and as a resident and practicing physician, and decreased to zero chances for a residency position (due to two "fail" attempts, and the time spent-6m waiting for the scores from the attempts).

"I have suffered significant career and financial damages (I have paid $3,160 for the exam [2015]), since my pass results are not recognized by NBME, I am not allowed to be employed as a physician. All residency programs require a passing result on Step 2 CS…Since residency programs considers the time spent and attempts to pass an exam, as well as years since graduation, my career due to NBME's conduct has suffered damages and significantly decreased my chances to get into a residency",
"I have lost time and money, and will lose more time to study and repeat material that I have passed…the current damages and a third attempt will result in bigger future harm to Plaintiff's career-pages 127, SAC-696, 756.

"total loss of three potential years of being into a residency program…(total loss of min. $158,000) and three years of making full salary as a physician after residency (min, $450,000*)*" (Page 15-line 15 in the initial complaint).

On Page 24-25 (citing Exhib.-page 608-line 48,49) **Appellant cited** Dr. E

Cassimatis who stated:

> "residency programs have as a condition of initial employment the
> requirement that residents have passed Step2 CS. In such circumstances
> **graduates who have not passed…are denied employment"**
> **concerns have also been raised regarding the scoring...**(page 50-at 32-40).

Dr. Cassimattis is an ECFMG President/CEO, and with NBME's president/CEO

Dr. Melnick, were two of the four 2CS-exam-Committee members.

**5)** Despite these factual allegations pleaded in the breach of contract claim,

**NBME frivolously claimed (page 732-733)** that Appellant:

> - *"has not provided any facts from which one reasonably could conclude that
> she* **suffered damages** *as result of any claimed breach", "because Dr. K…
> has* **not pled any facts** *that establish* **three of the four elements of breach** *of
> contract, the court should dismiss her claim".*

Plaintiff has pled facts (she is not certified, unemployed, lost money), at this

early pleading stage, and offered residency-program directors as witnesses;

- *"has not identified any contractual obligations that NBME failed to perform"* -

Appellant has pointed out that NBME claims publicly on usmle.org that the

exam is reliable and the results are reliable/"validated", but instead NBME

provided to her unreliable exam. NBME failed to perform under the contract.

- *"has not alleged full performance under the alleged contract"* – it was plead

that **NBME prevented full performance (pled on page 700,704, 707-line 4)** as

result of their unreliable exam and creating faulty exam conditions. Only

Substantial performance under these faulty conditions is possible.

**F.** Appellant also pleaded that NBME's claims that they "protect the public"

with a "reliable" exam and scoring are incorrect. Since, **actually**, the exam and

the scoring are unreliable/invalid, and thus NBME creates **"a risk to the**

**public**" (as admitted by NBME-experts). These false statements by NBME

under BPC 17200 and 17500, deceived the Appellant as an examinee and as a

member of this society. It was pled that NBME also violates CA Evid. Codes

622-623 by contradicting itself in the contract ("The written paper or instrument

need not represent an agreement" (Generes v Justice Court (1980) 106 Cal. App.

3d 678, 684 [165 Cal. Rptr.222]).

**G.** As a contributing factor affecting the scores, it was pointed out that in 2013

NBME changed the scoring decreasing the passing rate for US/Canadian-

graduates with only 3% but for all others with 18%. As per the EEOC-Uniform

guidelines Sections 1606 and 1607:

 EEOC states: "national origin" discrimination based on…individual's, or his or
her ancestor's, place of origin; or because an individual has the physical, cultural
or **linguistic** characteristics of a national origin group" and…**attendance or
participation in schools…, generally used by persons of a national origin
group**". (29 C.F.R. S 1606 and 1607).
"These guidelines apply to **tests** and selection procedures used for any
employment decisions. **Employment decisions** include …licensing and
certification". "**User.** Any employer… or licensing or certification board…
which uses a selection procedure as a basis for any employment decision."

EEOC advises that (SAC-page#668) exams like this one should be used later (after residency), not before residency training (the way they are used now):

"Use of selection procedures to evaluate applicants for a higher level job would not be appropriate:
(3) If the selection procedures measure knowledges, skills, or abilities required for advancement which would be expected to develop principally from the training or experience on the job". [1607.5].

Appellant pled that majority of the currently practicing physicians have never taken and passed this exam, incl. NBME's physicians, NBME's CEO, and the exam Committee members (in 2015), citing Griggs v Duke Power Co, 401 US 424 (1971). NBME pled that EEOC -guidelines are not applicable, because NBME is not Appellant's employer. However, In Hartman v NBME, Civil Action No. 09-5028, Pennsylvania), another examinee sued NBME for the same exam, NBME asserted that the same guidelines are applicable to them. In neither case is NBME an examinee's employer. NBME took opposite positions in two different courts (preventable by judicial estoppel).

**H. ECFGM, was erroneously removed as a Defendant**, although Appellant cited csec-website (on page 670) and pled that-(page 713):

"The Step 2 CS exam is **administered by CSEC. CSEC combines the expertise** of the **ECFMG® and NBME®**", "ECFMG partners with the NBME

**in administering Step2** CS, …ECFMG has…areas of expertise: **assessing** clinical skills [**i.e. 2 CS-exam**].

NBME issues certificates to US-graduates, and ECFMG issues certificates to foreign graduates. NBME and ECFGM were transferring the ball to each other, ~~misleading the court. NBME~~ claimed that they do not issue the certificate to foreign graduates as Appellant (only to US-grads), ECFMG claimed they are not responsible for the scoring, thus both trying to escape the law.

Appellant put them together- they both "**administer**"-**ed** the exam with reliability issues, and the **court made a mistake** in dismissing ECFMG. NBME used unreliable scoring, but ECFMG could have issued the certificate based on the fact that Appellant has passed each part of the exam (despite the faulty conditions she was put in) and despite the NBME's unreliable scoring.

**3**. What do you think the court below did wrong? (You may, but need not, refer to cases and statutes.)

The court **erred in his decision and abused its discretion** (**dismissing** the case) based on Fed. Rules 8(a)/12(b)(6), since the court made a mistake in the interpretation and application of the law, the legal doctrines, and the facts. The court **did not have the legal and factual grounds to dismiss the case and favor NBME, but the claims/facts were plausible enough to confirm the breach.**

a) The **court unjustly omitted the central/main factual allegation of the breach claim** (SAC-page 707-line 4)**- the exam is not reliable,** and "for the purposes of a motion to dismiss we must take **all** of the factual allegations in the complaint as true" (Starr v. Baca 652 F.3d 1202,1216 (9th Cir 2011). Appellant was telling the court multiple times (in all three complaints- initial, FAC and SAC) that the exam showed **reliability** issue. Appellant even attached **twice** (pages 192 and 614) a page from usmle.org/the contract where NBME publicly claims that the exam is reliable. This is a mistake of law.

The court also omitted the fact that providing an unreliable exam to the Appellant, eventually results in contradictory and inconsistent unreliable scores, i.e. **the court omitted here the "critical aspect of causation"** (*Id.*): **unreliable exam leads to unreliable/opposite scores (described by experts above)**. The same as: unreliable blood sugar test gives unreliable blood sugar results (affecting the diagnosis of diabetes and the treatment). Finally, the court omitted the fact that **the breach of contract based on the reliability issue was undisputed by NBME**. The court should have confirmed this breach, since it is not opposed by NBME. These unjust omissions affected adversely the case and are **mixed mistakes of law/fact**.

**b)** The court misinterpreted and misstated Appellant's assertions and "*desire*"-

The court claimed that it is "*Plaintiff's desire to change…NBME's scoring*", but
Appellant at least **three times** states **that it is not hers, but NBME's own
experts' "***desire***" **and advocacy** to change the scoring since it is not reliable.
(SAC- pages 707-line 27,757). Moreover, NBME itself claims that it uses its
own research studies to improve the exams. Appellant asserted the NBME
should have followed its own research-based conclusions and applied what
NBME itself claims to be a more "reliable" scoring. **Appellant specifically and
clearly stated** on page 757-line 12 that **"I just want fair scoring with no
reliability issues, especially when I have to pay so much money for this
exam, and this affects my career and employment"**. Appellant's "*desire*" is,
actually, **her right as an examinee to have a reliable exam** and reliable
scoring. Thus, the court's reasoning to dismiss the case based on "*Plaintiff's
desire*" not legally and factually justified. And this "*desire*" is based on
NBME's own research findings.

c) The court **erred in disregarding the fact that by providing faulty** exam
conditions, only the substantial performance doctrine can answer the question
whether the Appellant has the necessary skills on each part of the exam. NBME
rated her skills on the three parts as "pass". Substantial performance based on
passing separately parts of an exam is supported by common testing practice-see
above).

**d)** The court made a mistake of fact/law since it **omitted other of the pleaded** NBME's violations (BPC 17200, 17500 and Evid. Code 622-623-making untruthful and contradictory statements).

**e)** Appellant also requested: specific performance (preliminary injunction) ~~with/without damages; or to be allowed to review in details her two~~ contradictory/failing papers; or free third retake and the contradictory results removed from her file –none was granted-the court **omitted** and remained blind, deaf and mute for these requests. The court made a mistake of law regarding rules for preliminary injunction (see <u>Hartman v. NBME -Civil Action No. 09-5028, E.D. Pennsylvania).</u> Regarding the preliminary injunction this court held:

> "In addition, the longer Hartman continues to be barred from entering the profession, the longer society is prevented from enjoying the work of a very promising medical student …–irreparable injury–is also present. Any further delays will likely cost Hartman another year in applying to residency programs In order to merit the extraordinary relief of a preliminary injunction, Hartman must meet four factors…"(<u>Hartman v. National Board of Medical Examiners Civil Action No. 09-5028, Eastern District, PA</u> **citing** <u>Doe v. Nat'l Bd. of Med. Exam'rs, 199 F.3d 146, 154 (3d Cir. 1999).</u>

> "Trial court traditionally consider two factors…to issue preliminary injunction: is the Appellant likely to prevail on the merits, and would the Applicant be more harmed by withholding the injunction…The greater the showing on one factor, the less must be shown on the other to issue the injunction" (<u>Butt v. State of California, 842 P.2d 1240 (Cal. 1992)</u> -cited on page 699 in SAC.

**f) the court and NBME unjustly** put the Appellant in a situation where she has to continue passing multiple times each "*separate*" part of the exam, keep

17 | 20

paying, and still not be certified/employed because of unreliable exam. After the

court ruled against her, in a desperate attempt to save her career, Appellant did

not pay IRS, but paid NBME for a third attempt. She requested guarantees for

reliability, but NBME did not respond and did not give any guarantees for

reliability/validity. NBME stopped communicating after she paid for the exam.

Appellant paid total more than $4,600 for this exam. NBME and the court

unfairly make her to pass multiple times parts of this exam (compared to

examinees who passed the parts only once, in "one setting", and were certified).

NBME and the court treat Appellant as someone who has never taken and

passed the parts of this exam (as a first-time test-taker) and apply the same

"single administration" rule, when in fact - Appellant passed all parts in 2015

and is a third-time test taker. Due to reliability issues and the two contradictory

scores, it is likely that Appellant's score on ICE in May 2015 and CIS in Sept.

2015 were (unreliably) rated as fail, when they are, actually, "passed".

Appellant's results were "validated" (per page 192), but

> "tests …cannot be valid unless they are reliable "Citation: Huitt, W. (1999,
> October). Reliability and validity. Educational Psychology Interactive.
> Valdosta, GA: Valdosta State University. Retrieved".

**g**) The court mistakenly ruled that SAC is "equally verbose, confusing and

conclusory", without even a single hearing, since to parties the case is clear. In

FAC and SAC the breach is based on entirely different grounds: FAC (on

component-subcomponent wordplay, reliability is contributing), SAC- on

reliability/validity (main claim), and substantial performance (added in SAC).

FAC-deficiencies were cured in SAC, and the four elements of breach pled in

details in SAC. In our case, without any directions as to what had to be cured (in

FAC), and in SAC, the court did not allow **third** Am. Complaint.

> "district court satisfied this requirement by instructing Zamnik on how to cure the deficiencies in the complaint" Zamnik v Stillions (Case#.36-3_11, 9th Cir 1988)

**SAC meets/exceeds the requirement of Fed. Rule 8 (a) and 12(b) (6)**. The

claim for breach is stated in plain and short statement (in SAC on page 673),

supported by facts and thus, creating a plausible claim. NBME did not have

difficulty in responding to the claims. The criteria for these rules are clear, and

defined by the Ninth Circuit:

> "Some complaints are windy but understandable. The FAC and the original complaint contain excessive detail, but...clearly **delineate the claims and the Defendants** against whom the claims are made... Here, the Defendants should have no difficulty in responding to the claims with an answer..." Hearns v. San Bernardino 530 F.3d 1124, 1131 (9th Cir. 2008)

**"Plausibility"** of the claims in our case is solidly supported by research/expert's

findings and facts, and by **undisputed breach** of contract/covenant of good

faith-fair dealing based on use of unreliable exam and unreliable scoring,

**thus- Rule 12(b)(6) is satisfied.**

**4**. Why are these errors serious enough that this appeal should go forward?

The case should go forward since the NBMEs **scoring policy and the ruling , both** contradict research/experts' conclusions and the rules for a *"reliable assessment"*. And, **because this dangerous scoring policy "may pose risk to the public"** i.e. **endangers millions of patients' lives** and affects more than 30,000 examinees each year. Thus, the *"public policy strongly favor[s] resolution of this dispute on the merits*." The ruling **was entirely based on court's (mis)interpretations of** *"Plaintiff's desires"*, **rather than on the facts, research/expert's conclusions, exam defects (undisputed claims).**

Also, the **financial and career damages** (decreasing Appellant's chances to become a practicing physician in the US to zero) **were completely disregarded by the court,** thus the court erred in not granting any other relief it may find reasonable and thus, NBME's wrongdoing remains uncompensated.

**5.** Additional Information: Appellant respectfully submits this statement and requests for a **de novo** review by the Ninth Circuit so that justice be served.

Dated: 03/04/ 2017

Yoana A. Kiprilou
Print Name (s)

Signature (s)
Appellant (s) **in Pro Se**

**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 16-0952 JGB (SPx)** | Date | October 24, 2016 |
|---|---|---|---|

| Title | ***Yoana Ayanova Kiprilov v. National Board of Medical Examiners et al.*** |
|---|---|

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    Order: (1) GRANTING Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. No. 36.); and (2) VACATING the October 31, 2016 Hearing (IN CHAMBERS)**

Before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. ("Motion," Dkt. No. 36.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. For the reasons discussed below, the Court GRANTS Defendant's motion.

This is Plaintiff Yoana Ayanova Kiprilov's ("Plaintiff") third attempt to assert claims against the National Board of Medical Examiners ("Defendant" or "NBME"). Most recently, the Court granted NBME's motion to dismiss Plaintiff's First Amended Complaint ("FAC") on August 25, 2016. (Dkt. No. 30.) That order provided a detailed review of Plaintiff's factual allegations, which Plaintiff reiterates in her Second Amended Complaint ("SAC"), and which the Court summarizes only briefly here.

Plaintiff is an international medical school graduate who seeks to be accepted into a medical residency program in the United States. In order to be accepted into a residency program, she must pass the United States Medical Licensing Exam ("USMLE"). The USMLE has four parts: Step 1, Step 2 CK, Step 2 CS, and Step 3. Plaintiff's complaints center around the Step 2 CS exam, which consists of three subcomponents: "ICE," "CIS," and "SEP." All three components must be passed in a single administration in order to achieve a passing performance.

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk MG

Plaintiff has taken the Step 2 CS exam twice, first on May 20, 2015, and again on September 30, 2015, but she has not yet achieved a passing score—or at least, as she concedes, she has not yet successfully passed all the parts of the test in one sitting. During her first attempt, she received a "pass" score on "CIS" and "SEP," but failed the "ICE" subcomponent." During her second attempt, she passed the "ICE" subcomponent and the "SEP" subcomponent, but failed the "CIS" subcomponent. However—as noted prominently on NBME's publicly available materials—NBME's policy requires examinees to pass each of the three parts in one sitting to receive a passing score. Plaintiff's SAC, like her first complaint and her first amended complaint, arises from Plaintiff's disagreement with this policy.

---

Plaintiff's first amended complaint asserted causes of actions for:

1. Fraudulent deceit;
2. False descriptions in violation of 15 U.S.C. § 1125 and California Civil Code § 1770;
3. False advertising;
4. Unfair competition;
5. Breach of contract;
6. Unfair and deceptive practices in violation of 15 U.S.C. § 45;
7. Discrimination in violation of Title VII.

In its August 25 order, the Court found that each of these failed to state a viable legal claim. However, in recognition of the fact that Plaintiff was proceeding pro se, the Court permitted Plaintiff one final opportunity to amend her complaint, noting that if her amended complaint failed to state a claim under those portions of the complaint already dismissed, those claims could be dismissed with prejudice.

Notwithstanding the Court's admonition, Plaintiff proceeded to file an amended complaint that only repeated *the same allegations* as those made in her previously-dismissed claim for breach of contract. As in her FAC, Plaintiff repeats her assertion that NBME "breached our contract by not granting passing outcome [sic] based on my substantial performance." (SAC at 5.) Plaintiff further argues that "[NBME's] terms and conditions do not state that 'pass' results on each part will be invalidated.'" (Id. at 7.) First, Plaintiff's factual assertions are wrong: NBME's publicly available information states that an examinee must pass each of the three parts in one sitting in order to receive a passing score. [1] Second, as this Court has already explained, Plaintiff's desire to change the policies that *actually* govern the scoring of the USMLE does not convert NBME's refusal to pass her into a breach of contract.

---

[1] See Motion at 3 (citing to NBME scoring policies, available at http://www.usmle.org/step-2-cs/#scoring). This policy is also set forth in the USMLE booklet titled, "Step 2 Clinical Skills (CS) Content Description and General Information": "Each of the three subcomponents must be passed in a single administration in order to achieve a passing performance on Step 2 CS." Id.

---

　　　　　**CIVIL MINUTES—GENERAL**　　　　　Initials of Deputy Clerk MG

A court may exercise its discretion to dismiss an action with prejudice when the amended complaint merely repeats the deficiencies of the original complaint. In <u>Nevijel v. North Coast Life Ins. Co.</u>, 651 F.2d 671 (9th Cir. 1981), for example, the Ninth Circuit affirmed the dismissal of the first amended complaint without leave to amend because the amended complaint was "equally as verbose, confusing and conclusory as the initial complaint." 651 F.2d at 674. Dismissal without leave to amend is also appropriate where "amendment would be futile." <u>See, e.g.</u>, <u>Cervantes v. Countrywide Home Loans, Inc.</u>, 656 F.3d 1034, 1038, 1042 (9th Cir. 2011) (dismissal of first amended complaint without leave to amend affirmed where "plaintiffs fail[ed] to establish a plausible basis for relief"). Such is the case here. Despite multiple opportunities, Plaintiff has failed to assert actionable claims or to correct the deficiencies identified in the Court's earlier order, and it appears that any further attempt to amend would be futile. Accordingly, the Court GRANTS Defendant's Motion and dismisses Plaintiff's Second Amended Complaint WITH PREJUDICE.

The October 31, 2016 hearing on the Motion is VACATED.

**IT IS SO ORDERED.**

R E C E I V E D
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MAR 0 9 2017

**Form 6.  Certificate of Compliance With Type-Volume Limit**

FILED _____
DOCKETED _____
                              DATE            INITIAL

Certificate of Compliance With Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

1.  This document complies with [the type-volume limit of Fed. R. App. P.
    [ **insert Rule citation; e.g., 32(a)(7)(B)** not exceed 20 pages]] [the word limit of
    Fed. R. App. P. [ **insert Rule citation; e.g. 5(c)(1)** 5,200 word limit]]
    because, excluding the parts of the document exempted by Fed. R. App. P. 32(f)
    [and [ **insert applicable Rule citation, if any** _____]]:

    ☑ this document contains ___5,008___ words, or

    ☐ this brief uses a monospaced typeface and contains _____ lines of text.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)
    and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this document has been prepared in a proportionally spaced typeface using
    ___14-point_____ in
    ___Times New Roman_____ , or

    ☐ this document has been prepared in a monospaced typeface using

    _____ with

    _____ .

    /s/ ___Yoe_____
    Attorney for ___Pro se_____
    Dated: ___03/09/2017_____

11/16